**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| House to Home Strategies LLC, | § | Case No. 22-11690-ELF |
| | § | |
| Debtor. | § | |
| | § | |

**UNITED STATES TRUSTEE'S OBJECTION TO MOTION OF THE DEBTOR FOR AN ORDER APPROVING DEBTOR'S DISCLOSURE STATEMENT, FIXING TIME FOR FILING ACCEPTANCES OR REJECTIONS OF THE PLAN, AND FIXING THE TIME FOR FILING OBJECTIONS TO CONFIRMATION OF THE PLAN**

Andrew R. Vara, the United States Trustee for Region 3 ("U.S. Trustee"), by and through his undersigned counsel, hereby objects (this "Objection") to the *Motion of the Debtor for an Order Approving Debtor's Disclosure Statement, Fixing Time for Filing Acceptances or Rejections of the Plan, and Fixing the Time for Filing Objections to Confirmation of the Plan* (the "Approval Motion") because (i) the Disclosure Statement fails to satisfy the adequate information standard of Bankruptcy Code section 1125 and (ii) the Plan is patently unconfirmable on its face. In support of this Objection, the U.S. Trustee states as follows:

**BACKGROUND**

1. On June 28, 2022, House to Home Strategies LLC (the "Debtor") filed a voluntary petition (Docket No. 1) for relief under chapter 11 of the Bankruptcy Code.

2. On July 9, 2022, the Debtor filed an amended petition (Docket No. 8) that identified the Debtor as a debtor "whose primary activity is the business of owning single asset real estate" and not a "small business debtor."

1

3. The Debtor's primary asset is a single-family house sitting on 8.3 acres of land.

4. On July 18, 2022, the Court entered an Order (Docket No. 12) (the "Order Dismissing Case") dismissing the bankruptcy case due to the Debtor's failure to file all the documents required pursuant to Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

5. On July 27, 2022, the Debtor filed the *Debtor's Motion to Reinstate the Bankruptcy* (Docket No. 14) (the "Motion to Reinstate"), pursuant to which the Debtor sought entry of an order vacating the Order Dismissing Case. The Motion to Reinstate included as exhibits the past-due filings required by Bankruptcy Rule 1007.

6. On August 24, 2022, the Court entered the Order (Docket No. 18) ("Denial Order") denying the Motion to Reinstate due to (i) the Debtor failing to provide evidence of service on the docket and (ii) the Debtor and counsel failing to attend the hearing.

7. On August 29, 2022, the Court scheduled another hearing on the relief requested in the Motion to Reinstate for September 21, 2022.

8. Following the September 21, 2022, hearing, the Court entered the Order Vacating Dismissal (Docket No. 32) (the "Reinstatement Order"). Pursuant to the Reinstatement Order the court ordered that, among other things, "On or before October 19, 2022, the Debtor shall file and serve an amended chapter 11 plan, amended disclosure statement and a motion for approval of the disclosure statement."

9. On October 19, 2022, the Debtor filed timely its proposed Disclosure Statement and a reorganization Plan (Docket No. 55). The Debtor however did <u>not</u> timely file a motion for approval of the disclosure statement. The proposed Disclosure Statement and Plan instead incorrectly alleged that the Disclosure Statement was already approved by the Court.

10. The Plan lists a single secured claimant, US Bank Trust National Association ("<u>US Bank</u>"), which holds a claim secured by the Debtor's real estate. The Plan purports to treat the claim of US Bank as unimpaired.

11. On October 28, 2022, US Bank timely filed a proof of claim. To date, US Bank has been the only creditor to file a proof of claim, timely or otherwise.

12. Debtor's failure to timely file a motion for approval of the disclosure statement was raised on December 8, 2022, in the *Motion of the United States Trustee to Dismiss Debtor's Case or Convert to Chapter 7 for Bad Faith and Other Cause* (Docket No. 65) (the "<u>Motion to Dismiss</u>").

13. On December 15, 2022, the Debtor filed the Approval Motion (Docket No. 70).

14. The Debtor noticed the Approval on December 23, 2022 (Docket No. 75). The notice set a response deadline of January 11, 2023, which is 27 days after the Approval Motion was filed and 19 days after it was properly noticed. The Approval Motion is set for hearing on January 25, 2023.

# ARGUMENT[1]

15. The Debtor's Disclosure Statement is patently defective and cannot be approved. The Disclosure Statement omits material financial disclosures and information. It fails to provide sufficient detail of the sources of the income for funding the Plan, a concrete liquidation analysis, or a clear and conspicuous summary of the expected distributions to each creditor. It fails to discuss its conclusion that there will be no material tax consequences of the Plan to the Debtor. The Disclosure Statement refers to a Plan that is patently unconfirmable on its face because it is not feasible and not filed in good faith. In short, the Disclosure Statement does not contain "adequate information" to warrant its approval, and the Approval Motion should be denied.

16. Section 1125(b) of title 11 of the United States Code (11 U.S.C. § 101 *et seq.*, the "Bankruptcy Code") prohibits the solicitation of votes on a plan prior to court approval of a written disclosure statement which contains "adequate information." Adequate information is defined as:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan[.]

---

[1] To the extent any objection herein is deemed an objection to the Plan rather than, or in addition to, an objection to the Approval Motion, the U.S. Trustee reserves his right to assert such objection, and any other objections, at any subsequent confirmation hearing the Court may set.

11 U.S.C. § 1125(a). Further, "in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information". *Id.*

17. The "adequate information" requirement is designed to help creditors in active negotiations with debtors over the plan. *See Century Glove, Inc. v. First American Bank*, 860 F.2d 94, 100 (3d Cir. 1988); *citing In re Gulph Woods*, 83 B.R. 339, 342 (Bankr. E.D. Pa. 1988) (free negotiation among creditors regarding proposed plan is desired). Without adequate information, delineated in a simple and clear manner, *see In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988), creditors cannot make informed decisions about whether or not to support a proposed plan.

18. Where a proposed plan "is fatally flawed so that confirmation would not be possible", "[c]ourts generally have agreed that it may[ ]be appropriate to consider issues at the disclosure hearing stage which could otherwise be raised at confirmation". *In re Phoenix Petroleum Co.*, 278 B.R. 385, 394 (Bankr. E.D. Pa. 2001). This avoids the necessity of proceeding with expensive and/or lengthy solicitations of ballots and the confirmation hearing for a plan that is facially unconfirmable. *In re American Capital Equipment, LLC*, 688 F.3d 145, 154 (3d. Cir. 2012).

19. The Disclosure Statement does not contain information sufficient to enable hypothetical creditors to make informed judgments about the Plan, and both

the Disclosure Statement and the Plan omit material facts that must be available to holders of claims or interests.

20. The most glaring defect to the Disclosure Statement is its failure to provide sufficient detail explaining the sources of income for funding the plan. Pursuant to the Plan, the Debtor proposes to pay US Bank not from its funds, of which it has none, but through payments from the Debtor's principal. *See,* Disclosure Statement, Docket No. 55, page 19 of 21[2]. The Debtor has no ongoing operations or cashflow and the proposed Plan is not feasible absent payment from the principal. *See, e.g.,* Monthly Operating Reports at Docket Nos. 60–63.

21. The Disclosure Statement makes a bare representation that the principal of the Debtor and his wife make a combined $21,000 per month, from which they will devote $7,882.98 per month for 120 months, thereby paying US Bank's secured claim, scheduled at $945,957, at 0% interest. The Disclosure Statement further states the intent of the Debtor and its principal to seek additional funding from unknown lenders and to seek rezoning of the property to continue to redevelop and sell the improved real estate at a profit.

22. The Debtor has provided no evidence to support the alleged income of the principal and his spouse. Further, there is nothing evidenced in the Plan or Disclosure Statement that would bind the Debtor's principal to actually fund the Plan

---

[2] Stating that:

> In summary, the Plan proposes to pay U.S. Bank Trust Nation Association, Not In Its Individual Capacity But Solely As Trustee Of Greene Street Funding Trust As Debtor's financial projections demonstrate, Debtor will be financed monthly by Debtor's principal Trevor Krill and his wife Ann Krill's monthly income.

6

upon confirmation. The Disclosure Statement provides insufficient detail as well regarding the additional financing Debtor hopes to secure, and there is no indication as to how likely a rezoning of the Debtor's real estate might be, let alone any indication as to the chances of successfully redeveloping it. The Debtor's sketch of a business plan does not provide the context necessary that would allow a hypothetical party to make an informed decision about Debtor's Plan. Moreover, the information that is included demonstrates that the Plan is aspirational at best and provides no support for a finding that the Plan is feasible.

23. The Plan indicates that US Bank, the only scheduled non-administrative claimant, has an unimpaired claim, which will be paid at 100% of the scheduled amount over 10 years at 0% interest. On the asserted basis that this claim is unimpaired, the Disclosure Statement and Plan do not contain a liquidation analysis. However, the scheduled claim for US Bank and its treatment under the Plan is materially different from the proof of claim filed by US Bank. The proof of claim, which has not yet been objected to, lists a higher total amount (approximate $1.03 million), including nearly $300,000 necessary to cure the Debtor's default at an interest rate of 8.46% per annum. The note attached to the proof of claim indicates that the interest rate becomes variable in February 2026.

24. Consequently, US Bank's claim is impaired because the Plan alters the bank's legal rights without providing for a mechanism to cure the default and reinstate the loan. *See* Bankruptcy Code section 1124. Among other things, the fact

7

that US Bank's claim is impaired renders the Disclosure Statement's lack of a liquidation analysis a fatal flaw preventing approval of the Disclosure Statement.

25. The Disclosure Statement contains a section titled Tax Consequences of Amended Plan yet concludes without explanation that the Plan will have no consequences to the Debtor's tax liability. The Disclosure Statement does not state what tax consequences might result depending on whether the Debtor successfully rezones its real estate, acquires funding, and further develops the land for sale, as either commercial or residential property. In fact, there is no explanation as to how Debtor has filed taxes in years past, either. Without additional context, it is impossible for a creditor to know under what set of circumstances the Debtor anticipates there to be no tax consequences of the amended Plan, and therefore, it is impossible for a creditor to make an informed decision about whether or not to support the Plan.

26. Similarly, the Disclosure Statement contains a section titled Risk Factors, but it does not detail real apparent risks, such as what might happen if the Debtor is unable to have its real estate rezoned and/or redeveloped, if the interest rate on Debtor's mortgage rises, or if Debtor's principal and spouse lose their sources of income. The failure to discuss such risks renders the Disclosure Statement not approvable, as parties cannot make judgments about the Plan based on what is in the Disclosure Statement.

27. Finally, the Disclosure Statement includes a feasibility analysis that suffers from the same problems as the rest of the document. The analysis assumes

that the Plan is feasible because it provides for payment of the Debtor's secured creditor, US Bank, in full on an unimpaired claim, with funding from the Debtor's principals. The analysis is incorrect because US Bank's claim is impaired. The analysis is unhelpful because it assumes the Debtor's principal will honor the funding of the Plan, without any enforcement mechanism or guarantee that the principal can and will do so. The analysis is not useful to a hypothetical creditor deciding whether or not to vote on the Plan, because it again makes bare, unsupported assertions that the Plan will additionally be funded by outside funding sources and the Debtor's property will be rezoned to turn a profit. This skeletal analysis does not provide adequate information and does not give comfort to any party in interest that the Plan is feasible.

28. Even if the Disclosure Statement provided adequate information, which it does not, a disclosure statement that describes a facially unconfirmable plan should not be approved. *See, e.g., In re Curtis Ctr. L.P.*, 195 B.R. 631, 638 (Bankr. E.D. Pa. 1996) ("[A] disclosure statement should be disapproved where the plan it describes is patently unconfirmable."); *In re Market Square Inn, Inc.*, 163 B.R. 64, 68 (Bankr. W.D. Pa. 1994) ("Where it is clear that a plan of reorganization is not capable of confirmation, it is appropriate to refuse the approval of the disclosure statement.").

29. Here, in addition to the flaws in the Debtor's Disclosure Statement described above, the Debtor's Plan remains facially unconfirmable for the reasons stated in the U.S. Trustee's Motion to Dismiss, at Docket No. 65. Principally, the Debtor has not established that the bankruptcy was filed for a valid bankruptcy

purpose and therefore has not established that the bankruptcy was filed in good faith. As admitted by the Debtor, it filed for bankruptcy to stave off a foreclosure sale initiated by its sole secured creditor on the Debtor's single asset piece of real estate. No further amendments to the Debtor's Plan will change the underlying fact that the bankruptcy was not filed for a valid purpose. Therefore, the Plan is patently unconfirmable on its face, which is a determination that can be made at the Disclosure Statement stage. The Approval Motion regarding the Disclosure Statement therefore ought to be denied, rather than incurring the expense of proceeding through a futile solicitation and confirmation process.

30. Cause also continues to exist to dismiss the Debtor's case for failure to comply with the Court's order to move for approval of the Disclosure Statement by the October 19, 2022, deadline, and the Debtor's subsequent Approval Motion cannot remedy this prior oversight *sua sponte*.[3]

## **CONCLUSION**

31. The Debtor's Disclosure Statement is patently defective as it fails to contain adequate information, and the Plan is facially unconfirmable. For these

---

[3] The U.S. Trustee notes that even the Approval Motion does not fully comport with noticing requirements. Per Bankruptcy Rule 2002(b), approval of disclosure statements must be sent out on 28 days' notice to parties in interest. Rule 9006(a)(1)(A) states that when computing time periods in days, to exclude the day of the event triggering the period. Thus, a deadline running 28 days from the filing of the Approval Motion on Thursday, December 15, 2022, would elapse on Thursday, January 12, 2023, rather than January 11, as the Debtor noticed it. Further, the Debtor did not properly notice the Approval Motion until December 23, 2022. However, the hearing on the Approval Motion scheduled for January 25, 2023, will be more than 28 days following noticing of the motion.

reasons, the Debtor's Approval Motion should be denied, and the Debtor should not be allowed to move forward with solicitations or a confirmation of the Plan.

**WHEREFORE,** the U.S. Trustee requests the entry of an order denying the Approval Motion and granting such other and further relief as the Court deems just and proper.

Dated: January 10, 2023　　　　　　Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**
**For Regions 3 and 9**

By: /s/ *Kevin M. Cartwright*
Kevin M. Cartwright, Trial Attorney
John H. Schanne, Trial Attorney
Office of The United States Trustee
Robert NC Nix, Sr. Federal Building
900 Market Street, Suite 320
Philadelphia, PA 19107
Phone: (215) 597-4411
Facsimile: (215) 597-5795
Kevin.Cartwright@usdoj.gov
John.Schanne@usdoj.gov